[L. A. No. 3335. Department Two.—October 2, 1914.]

LUTIE RAYMOND et al., Respondents, v. FRANK C. HILL, Appellant.

NEGLIGENCE—COLLISION BETWEEN AUTOMOBILE AND PEDESTRIAN—ACTION FOR PERSONAL INJURIES—INSTRUCTIONS.—In an action to recover for personal injuries sustained by a pedestrian through being struck by an automobile going in the same direction that she was walking, an instruction "that the act of a pedestrian on a public highway in running in front of an automobile, as the result of fright or terror, caused by the sudden discovery of the automobile near him, or by a noise caused by the automobile, does not necessarily constitute contributory negligence on his part, or, in other words, if the act of the defendant caused fear and loss of presence of mind on the part of the plaintiff, so as to impel her to rush into danger, as stated before, her mere error or mistake of judgment in so acting shall not be taken by you to be contributory negligence on her part," is properly given, if it appears from the testimony given on behalf of the defendant that the plaintiff suddenly and seemingly in a panic rushed blindly into the automobile, notwithstanding the testimony on behalf of the plaintiff fails to show any knowledge upon her part of the presence of any danger.

ID.—BASIS OF INSTRUCTIONS—EVIDENCE OF ENTIRE CASE.—In such case the court is not under any duty to model its instructions solely upon the evidence given on behalf of plaintiff; its duty is to give instructions expounding the law upon every reasonable theory of the case finding support in the evidence.

ID.—RIGHT OF PEDESTRIAN IN HIGHWAY—RECKLESSNESS OF DRIVER OF VEHICLE—An instruction in such action that pedestrians have in general, and under reasonable restrictions as to exercise of care by them, a right to travel anywhere upon a public highway, and that it is negligence for a driver of a vehicle upon a public high-

way to recklessly run upon a pedestrian who is standing or walking with his back toward him, is not erroneous as imputing reckless driving to the defendant. It states an unimpeachable proposition of law, holding responsible for the injuries which he may inflict, the reckless driver of a vehicle.

ID.—LAW OF ROAD—PASSING VEHICLES—OBSTRUCTED HIGHWAY.—The law that vehicles and pedestrians shall pass to the right when they meet in a highway, and to the left when they approach from the rear, does not mean that where the driver of an automobile seeks to enter upon a highway which is impassable in part by reason of obstructions, he must abandon the highway because his machine cannot cross to the right hand side. It is then legally permissible for him to use the left hand side of the highway if the roadway is of ample width to permit that use with safety to pedestrians and a clear passage to approaching vehicles.

ID.—FOOT PASSENGERS—RIGHT TO USE ALL PARTS OF ROAD OR STREET—PLACE OF CROSSING.—As to foot passengers, the old common-law freedom of use of the king's highway has not been modified in this state by any positive enactment, so that it still remains the law that they have the right to use and traverse the highway at all its points, being chargeable only for exercise of a due amount of care, which care, in its *quantum,* is governed by the circumstances attending the use which the pedestrian actually makes. Even in populous streets of cities, pedestrians are not restricted to the crossings in traversing a street, but may cross it at any point, and the same is true of their right to walk along the roadbed of a highway.

ID.—RELATIVE CARE REQUIRED OF PEDESTRIANS AND DRIVERS OF AUTOMOBILES.—While both pedestrians and drivers of motor vehicles are charged with the exercise of the same degree of care, the amount of care by law demanded of the latter is far greater than the amount exacted from the former, especially when the latter are approaching foot passengers from the rear. Of the driver of a motor vehicle under such circumstances, the law in terms requires that he shall not only give reasonable warning of his approach, but "use every reasonable precaution to insure safety."

ID.—DRIVER OF AUTOMOBILE—DUTY TO EXERCISE REASONABLE PRECAUTIONS.—In the exercise of "every reasonable precaution" which the law enjoins, it is well within the spirit of the law to say that the driver of an automobile approaching pedestrians from the rear, and particularly women, must have his car under such control as that it may be promptly stopped. The sounding of the horn and the noise of the muffler cut-out are each and both well enough in their way, but they do not embrace and conclude all of the duties of the driver.

ID.—PEDESTRIANS IN STREET—DUTY TO BE ON LOOKOUT FOR VEHICLES FROM REAR.—The pedestrians, in such case, are not required to look back to see if they are in danger of being struck from behind.

ID.—COLLISION BETWEEN AUTOMOBILE AND PEDESTRIAN—INSTRUCTION
EXONERATING DRIVER.—Where the right side of a street is impass-
able, and one of a group of pedestrians walking on the left side
is struck by an automobile approaching from the rear, the driver
of the machine, in an action against him for personal injuries suf-
fered by the pedestrian, is entitled to an instruction that he was
lawfully and rightfully on that part of the highway, and that he
is not liable if he used every reasonable precaution in his approach,
notwithstanding which the pedestrian ran into the machine; there
being evidence that the pedestrian was unaware of the approach
of the automobile until it struck her, and also evidence that she
suddenly became aware of its proximity and in fright ran from a
place of safety into one of danger.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order refusing a new trial. N.
P. Conrey, Judge.

The facts are stated in the opinion of the court.

Geo. S. Hupp, for Appellant.

Newmire & Morris, for Respondents.

HENSHAW, J.—This action was brought by Lutie Ray-
mond and her husband, Harry Raymond, to recover damages
for injuries inflicted upon the former. The complaint charged
that Lutie Raymond was injured by the negligent act of the
defendant in carelessly and recklessly causing an automobile
driven by himself to strike Lutie Raymond, inflicting upon
her specified injuries for which compensation was sought.
Trial was had before a jury, which brought in a verdict in
favor of plaintiffs in the sum of two thousand dollars. Judg-
ment followed. Defendant moved for a new trial, and from
the order denying his motion and from the judgment, he
prosecutes this appeal.

The accident happened upon North Lake Street, a public
highway of the county of Los Angeles. North Lake Street
runs north and south. At its northern end Sans Souci Ave-
nue, running east and west, crosses it. The middle portion
of North Lake Street from Sans Souci Avenue southward
was occupied by an electric railway and was impassable to
vehicles because of construction work which the railway com-
pany had under way. Plaintiff and her husband, with two

companions, Mr. and Mrs. McMillan, were walking in a southerly direction on the eastern portion of the roadway of North Lake Street. The two women were walking together, as were also the two men. The women were six or eight feet ahead of the men. All were walking upon the westerly or street railroad side of the easterly half of North Lake Street, Mrs. McMillan being nearest to the railroad tracks, the plaintiff Lutie Raymond walking at her left side. Defendant Hill, driving his automobile, and accompanied by his wife and Mr. and Mrs. Mathews, turned into North Lake Street from Sans Souci Avenue on the east, and desiring to go south upon North Lake Street, and being unable to cross North Lake Street at Sans Souci Avenue, turned southward upon the eastern half or division of that street. They thus traveled some four or five hundred feet, passing several different parties who were walking upon the highway, until they approached the pedestrians composing plaintiffs' party. The accounts of the accident given by plaintiffs' party and by the occupants of the automobile are in sharp conflict, indeed in amazing conflict. The plaintiff, Mrs. Raymond, testifies: "The first thing I knew I was struck in the back—it seemed to me I heard a horn blow just at the time it struck me, but I didn't hear anything until it struck me and I didn't know anything more until they picked me up. I don't remember hitting the ground—all I know was when it struck me that I felt the lick and the horn at the same time—that is all I know." Her husband's testimony is to the following effect: "The first intimation I had of the presence of the automobile was when it struck my wife. I saw no automobile or heard any sound until the automobile struck her." Mrs. McMillan declares: "The automobile was almost on us before we heard the noise and I heard it just a little bit and turned and looked and it struck her just then and hit her and carried her in front of the automobile. We didn't hear the sound of any horn. The front of the automobile hit her in the back and hip. It was not the fender that hit her." Mr. McMillan adds this: "I did not hear any automobile horn. The first thing I saw was Mrs. Raymond going round in the air on the side of the automobile." The testimony of the automobile party is that they proceeded south on North Lake Street slowly and with great caution, keeping to the extreme easterly side of the roadway, and repeatedly sounding the auto-

mobile horn and keeping open the muffler cut-out which made audible a loud roaring sound of the engine. They discovered the Raymond party at least a hundred feet before they reached them, and kept the muffler cut-out open continuously and sounded the horn at least three or four times as they slowly approached them from behind. The horn was last sounded as the automobile came opposite to the men, who, as has been said, were some six or eight feet behind their wives. The immediate circumstances of the accident are thus told by defendant Hill. Having testified to the facts above narrated and to the further fact that the roadway was about fifteen feet wide, that he was traveling as near as possible to the eastern gutter, and in the course he was pursuing would have passed the Raymond party with at least six feet of space between, he says: "I passed Mr. Raymond about six feet distant. Just as I got about opposite the men my horn was sounded again and then Mrs. Raymond threw out her hands and ran to the east, directly in the path of my machine, or that would have been my path if I had continued on my course. She had given some indication of hearing my horn by turning to the left. She threw out her arms this way and got her head down and ran across the road as hard as she could. Just as she started I put on my brake and steered to the left and she ran into the side of the front fender a foot or eighteen inches back of the front end of it. My machine had practically stopped running at the time she struck but the back end skidded off into the gutter which was on an incline from the roadway. From the time I applied my brake to the time I stopped, the machine did not travel over six feet. . . . Mrs. Raymond ran into the machine with her hands up and tried to push herself away from the machine; she then turned around and sat on the running board between the two fenders and from there sat down upon the ground." Mr. Mathews testifies: "But just as we got up to the party Mrs. Raymond looked around and saw the machine and ran into the side of the front fender. At the moment Mr. Hill saw her starting to run he put on the brake and the machine skidded to the east and the rear wheels went into the gutter. As she hit the fender she turned around and sat down on the running board and then fell to the ground." Mrs. Hill declares: "As we passed the men and repeated our warning Mrs. Raymond suddenly turned around

and jumped and ran into the road to her left and we veered off as far as we could to the left and she ran into the side of the front fender." And Mrs. Mathews adds this in corroboration: "When we got even with the men Mrs. Raymond turned around and then started to run right toward the left of the road and Mr. Hill immediately put on the brake, veered to the left and stopped the machine, and by that time Mrs. Raymond had gotten right up to the machine. She ran into the front fender and the impact of touching the machine pushed her back and she kept going back to the back of the fender and sat down on the running board, and as the rear wheel skidded into the ditch Mrs. Raymond slid off and sat on the road."

Appellant's first complaint is that the court gave certain instructions touching the conduct of a person suddenly faced with an imminent danger. Thus the court declared: "You are further instructed that the act of a pedestrian on a public highway in running in front of an automobile, as the result of fright or terror, caused by the sudden discovery of the automobile near him, or by a noise caused by the automobile, does not necessarily constitute contributory negligence on his part, or, in other words, if the act of the defendant caused fear and loss of presence of mind on the part of the plaintiff, so as to impel her to rush into danger, as stated before, her mere error or mistake of judgment in so acting shall not be taken by you to be contributory negligence on her part." It is not questioned but that this instruction is unimpeachable in point of law. (*Schneider* v. *Market St. R. R. Co.*, 134 Cal. 482, [66 Pac. 734].) But it is insisted that the giving of the instruction was erroneous and injurious since under the testimony of the plaintiffs themselves and all of their witnesses to the accident, there is not the slightest evidence to show knowledge upon the part of Mrs. Raymond of the presence of an imminent or of any danger, her testimony being as above quoted, that the first thing she knew was that she was struck in the back. It is unquestionably true that the testimony of plaintiffs and of plaintiffs' witnesses, if that testimony controlled the discretion of the court in the matter of giving instructions, would render such an instruction as this entirely foreign to the case and perhaps injuriously erroneous under the authority of such cases as *Hanks* v. *Naglee*, 54 Cal. 52, [35 Am. Rep. 67], and *In re*

*Calkins,* 112 Cal. 305, [44 Pac. 577]. But the court was not under duty to model its instructions solely upon the evidence given on behalf of plaintiff. Its duty was to give instructions expounding the law upon every reasonable theory of the case finding support in the evidence. When the testimony on behalf of defendant is considered it will be noticed that Mrs. Raymond suddenly and seemingly in a panic rushed blindly to the left and into the automobile. The very circumstances of the accident as related by defendant's witnesses lend weight to the argument that she suddenly became aware of the proximity of an automobile, and in her terror, not pausing to determine its location and direction, endeavored to get off the street, and so rushed from a place of safety into one of danger. Under this view of the evidence, which was a permissible one for the jury to take, the instructions complained of were pertinent and apposite.

The court further advised the jury in the following language: "Pedestrians have in general and under reasonable restrictions as to exercise of care by them, a right to travel anywhere upon a public highway, and it is negligence for a driver of a vehicle upon a public highway to recklessly run upon a pedestrian who is standing or walking with his back toward him." Appellant complains that this instruction imputes reckless driving to the defendant. This in fairness cannot be said. The instruction states an unimpeachable proposition of law, holding responsible for the injuries which he may inflict, the reckless driver of a vehicle. Nor, however foreign to the facts appellant may think this instruction to be, it is nevertheless true that it was addressed to an allegation of the complaint and to the testimony touching reckless driving which plaintiffs and their witnesses offered.

With these exceptions, the instructions given by the court are unchallenged, and it may be added that they are fair and dispassionate instructions. One of the appellant's principal grievances, however, is over the court's refusal to give certain proposed instructions which he insists were pertinent and even necessary to a fair consideration of the case by the jury. One of these instructions was to the effect that if "defendant Hill gave sufficient warning of his approach and that the said Lutie Raymond knew of the approach of defendant's automobile, and in spite of said knowledge attempted to run toward said machine, the said Lutie Raymond was guilty of

such negligence as contributed to the injury, and you should find for the defendant." Another was in the following language: "The court instructs the jury that if they believe from the evidence that at the time of the accident the defendant Hill was driving his automobile in a careful and prudent manner, and if the jury further believes from the evidence that defendant Hill saw the plaintiff in front of him, and that she was then walking close to the track, and not in a line directly in front of said automobile, that the said Hill had the right to assume that the plaintiff would continue on in the same direction in which she was then going and had the right to assume that she would not turn to the left so as to be in front of the automobile, and you are further instructed that if you believe from the evidence that the plaintiff, Lutie Raymond, did turn toward the left without stopping and looking around to see if vehicles were coming up behind her, that then she was guilty of such contributory negligence as will defeat her right of action herein, and your verdict should be for the defendant." Additionally, the appellant requested the court to give the two following instructions:

"The court instructs the jury that the plaintiff in this action cannot avail herself of the mere fact that the defendant was on the wrong side of the road inasmuch as she herself was on the wrong side of the road, and she cannot be heard to complain of the defendant doing an act which she herself was doing, and the jury is instructed that under such circumstances no presumption is to be raised against this defendant in this action."

"You are instructed that both the plaintiff and defendant were traveling lawfully and rightfully upon the east side of North Lake Street and each had an equal right to be on the east side of the street."

As has been said the instructions which the court gave were unimpeachable in point of law. They were, however, in their nature general instructions to the effect that a person operating a motor vehicle and approaching another walking on a highway, must give reasonable warning and use every reasonable precaution to insure the safety of such person; and, that if the plaintiff "was guilty of any act of negligence which directly contributed to her injury, or was guilty of any lack of ordinary care on her part, whether the act be an active one or an omission to do what she ought to have

done under the circumstances, and such lack of care, act or omission contributed to the accident, and without which the accident would not have occurred; then you cannot go further and apportion the accident or injury, but the plaintiff's contributory negligence in such case defeats recovery, and your verdict must be for the defendant.''

The gravamen of appellant's complaint is that no specific instructions, touching the right to use the highway as it was being used by the parties to the litigation, or governing the question of Lutie Raymond's negligence in doing what defendant's witnesses testified she did, were given by the court. As to the last specification of error, it is pointed out that while the jury was told in effect that the conduct of Lutie Raymond, if occasioned by sudden fright or terror ''did not necessarily constitute negligence on her part,'' the court refused to tell the jury, as requested in the first of the rejected instructions above quoted, that if the defendant exercised due care in operating his machine and that, notwithstanding this, Lutie Raymond placed herself in a position of peril and was injured therefor, she could not recover.''

To the proper consideration of appellant's grievance, a word must first be said touching the use of highways. So long continued and universal has been the custom in California for approaching vehicles or pedestrians to pass to the right, and to pass to the left where the approach is made from behind another vehicle or pedestrian, that it may be said to be a part of our common law. In this state the custom, in part, has been crystallized into statute law. (Stats. of 1905, p. 816.) This law declares it the duty of the drivers of all motor vehicles to pass to the right of an approaching person or vehicle and to ''give reasonable warning of approach, and use every reasonable precaution to insure the safety of such person or animal.'' (Sec. 3, subd. 3.) In the same way it is declared the duty of the driver of the motor vehicle to pass to the left on approaching any person or other vehicle from the rear. The effect of these laws, as well as of the custom, is to prompt vehicles generally to use the right hand portion of the highway. But this does not mean that where one seeks to enter upon a highway under the circumstances depicted in the evidence of defendant, they must abandon the highway because the vehicle cannot cross to the right hand side. It was legally permissible for the defendant to use the

easterly or left hand side of the highway as he undertook to use it, and no negligence could be predicated merely upon such use, it appearing that the roadway was of ample width to permit that use with safety to pedestrians and a clear passage to approaching vehicles. As to foot passengers, the old common-law freedom of use of the king's highway has not been modified in this state by any positive enactment. So that it still remains the law that foot passengers have the right to use and traverse the highway at all its points, being chargeable only for the exercise of a due amount of care, which due amount of care, in its *quantum*, is governed by the circumstances attending the use which the pedestrian actually makes. Thus in this state, even in populous streets of cities, pedestrians are not restricted to the crossings in traversing a street, but may cross it at any point. And the same is true of their right to walk along the roadbed of a highway. Owing to the facts of the great congestion of certain parts of our modern cities, of the immensely improved modes of rapid transportation over the highway and of the desirability of seeing that all such traffic is moved as expeditiously as may be, some cities have compelled pedestrians to use the authorized crossings alone. Slow moving vehicles are required by our own law to keep as closely as possible to the right hand boundary of the highway (Stats. 1913 p. 639; sec. 20 subd. i.) and it would be well to impose such an exaction on pedestrians. But no such law is upon our books, and it follows therefore that all parts of the highway are as open to the use of foot passengers as to vehicles. (2 Elliott on Roads and Streets, 2d ed., paragraphs 1086, 1087, 1088 and cases.) It results herefrom that plaintiff was in the exercise of her right in being upon the highway when and where she was.

But under the circumstances shown in this case, certain very important considerations differentiate the rights and duties of plaintiffs and defendant. Some of these will readily occur to mind. One is that the pedestrians were traveling on a part of the road and under circumstances where they could reasonably look for vehicles approaching them from in front, but would not naturally be expected to contemplate that an automobile would come up behind them, and they were under no legal obligation to look back to see whether they were in danger of being struck from behind. (Elliott on Streets & Roads, 3d ed., sec. 1088.) Another is that to

the driver of the automobile the pedestrians were plainly visible. The automobile was not visible to the pedestrians. Still a third is that it was within the power of the automobile to inflict injury or death. Such was not the power of the pedestrians. Upon the part of the driver of the automobile, therefore, we have a known approach to foot passengers with the power to inflict grave injury. Upon the part of the foot passengers we have the unconsciousness of such approach, with absolute inability to inflict injury and a measurable inability to avoid the infliction of injury. While both parties are charged only with the exercise of the same degree of care, it is manifest that the amount of that care by law exacted of the driver of the motor vehicle is far greater than the amount exacted of the foot passengers. Of the driver of a vehicle under such circumstances, the law in terms requires that he shall not only give reasonable warning of his approach, but "use every reasonable precaution to insure safety." We are aware that from the point of view of the driver of an automobile foot passengers frequently seem to display a negligence amounting to an indifference to the law of self-preservation; while from the view-point of the pedestrian, the driver of the automobile evinces a wanton recklessness meriting condign punishment. But nevertheless no person who has ever ridden in or driven an automobile can be unaware of one fact, and that is that pedestrians, and women particularly, are liable to sudden panic upon the unexpected approach of this terrifying machine. In the exercise of "every reasonable precaution" which the law enjoins, it is well within the spirit of the law to say that the driver of an automobile approaching pedestrians, and particularly women, must have his car under such control as that it may be promptly stopped. The sounding of the horn and the noise occasioned by the muffler cut-out are each and both well enough in their way, but they do not embrace and conclude all of the duties of the driver of the automobile. (*Geiselman* v. *Schmidt,* 106 Md. 580, [68 Atl. 202] ; *Simeone* v. *Lindsay,* 6 Penne. (Del.) 224, [65 Atl. 778] ; *Gregory* v. *Slaughter,* 124 Ky. 345, [124 Am. St. Rep. 402, 8 L. R. A. (N. S.) 228, 99 S. W. 247].)

It would seem to be fairly inferable from the facts (though it should be remembered that this is stated solely for the purpose of the legal discussion herein had and for the enlightenment of the trial court in the event of a new trial) that

defendant did approach this party of pedestrians with horn blowing and with muffler cut-out roaring. It appears further that through preoccupation they were not aware of the presence of the automobile until it was just behind them. It further appears, as is not unusual, that Lutie Raymond was thrown into a blind panic upon the discovery, and that she rushed in front of or into the side of the automobile. Taking this statement as presenting a reasonable view of the evidence, then the questions for the jury are not complicated by the rightful or wrongful presence of either the automobile or the pedestrians upon the portion of the highway which they were occupying. Both were within their legal rights in being where they were. The vital question for solution by the jury is whether the driver of the automobile used every reasonable precaution to insure the safety of plaintiff up to the moment she was struck. If he did, then the accident belongs either in the category of inevitable casualty or is attributable to the negligence of plaintiff herself. But as a part of the reasonable precaution which the law enjoins upon the driver of an automobile to use, is the necessity of making certain that foot passengers are aware of the rearward approach of the vehicle, that the vehicle itself is at such a distance from the pedestrian as to avoid running over him in his sudden panic from surprise at knowledge of its unexpected approach, and, finally, that the vehicle is under such control as that it may be stopped promptly. If appellant did all these things, then he is exonerated, notwithstanding the fact that injury to plaintiff resulted, for such injury could have resulted only from her own negligence under circumstances relieving defendant from blame.

It must be concluded, therefore, that appellant's grievance is well founded. There may well have been a misapprehension in the minds of the jury concerning the right of vehicles to use the left hand portion of a highway. Appellant was entitled to the instruction that he was lawfully and rightfully upon that portion of the highway. He was further entitled to the specific instruction that if he used reasonable care— that is "every reasonable precaution" in his approach, and Lutie Raymond, notwithstanding, ran into the machine, defendant was not liable.

It follows herefrom that the court's refusal to give the indicated instructions was error seriously prejudicial to appel-

lant, and for this reason the judgment and order are reversed and the cause remanded.

· Lorigan, J., and Melvin, J., concurred.