[Civ. No. 13695.   Second Dist., Div. Two.   Aug. 28, 1942.]

LEWIS REED, Appellant, v. WILLIAM F. STROH et al.,
Respondents.

Fred N. Howser and Wahlfred Jacobson for Appellant.

Joseph A. Ball for Respondents.

MOORE, P. J.—This action is for damages resulting from personal injuries alleged to have been suffered by plaintiff when struck by a truck belonging to Price Brothers and driven by defendant Stroh. Defendants pleaded a general denial and contributory negligence. On his appeal from an unfavorable judgment plaintiff contends (1) that the evidence does not support the verdict and (2) that certain instructions to the jury materially prejudiced his cause.

The accident occurred on July 26, 1941, at about 10:30 a. m., while plaintiff was walking across Long Beach Boulevard at Plymouth street in a business district of Long Beach. He received severe bodily injuries. Long Beach Boulevard, 78 feet in width, runs north and south; Plymouth Street, 36 feet in width, running east and west, intersects it. On the south side of Plymouth is a marked crosswalk 10 feet wide over Long Beach Boulevard. Within the crosswalk and at the center of the boulevard was a sign: "Stop for Pedestrians." Long Beach Boulevard has four traffic lanes. At the trial the lanes were numbered from one to four, commencing on the west.

■ (1) Besides himself, plaintiff presented five witnesses the substance of whose testimony was that plaintiff stepped from the west curbing of Long Beach Boulevard within the marked crosswalk and started toward the east side; that while thus proceeding the truck, 20 feet in length, driven by defendant Stroh, struck plaintiff and hurtled him through the air; that as the truck approached plaintiff it was traveling at about 35 miles per hour. The witnesses who observed the actual impact placed the point of his fall to the pavement at about 20 feet south of the crosswalk. Officer Day of the police force found a pool of blood on the street 28 feet south of Plymouth

Street, and the truck was standing 43 feet and 2 inches south of Plymouth and 20 feet east of the west curb of Long Beach Boulevard. Plaintiff testified that after leaving the barber shop at the southwest corner of the intersection he walked to the corner, stopped and waited for the red light at the intersection one block to the north and for the oncoming traffic to pass before he started across the boulevard; that he continued within the crosswalk in an easterly direction, and that his collision with the truck occurred between the west curb and the center of the street.

Before reciting the evidence received on behalf of defendants it is pertinent here to observe that the foregoing testimony may have been discounted by the jury by reason of the following: At the instant of the impact, witnesses Cash and Bentley were 200 feet north of the *locus* of the collision, and the accuracy of their observations might have been impaired by reason of such distance as well as by the fact of their attention to the matter of their crossing the boulevard; that the witness Mrs. Murray had stopped in the center of Plymouth for an instant only before entering Long Beach Boulevard in order to make a left-hand turn and to avoid peril to herself; that while she corroborated the other witnesses for plaintiff, yet she placed plaintiff at the time of the impact at about 20 feet south of the crosswalk; that the attention of the witness Vermillion was attracted by the collision when he "looked up" and saw plaintiff's body going through the air. As to plaintiff's own testimony, he intended to cross Long Beach Boulevard for the purpose of visiting a store in about the middle of the block south of Plymouth; that he stopped to let some cars pass before starting; that on stepping from the curb he did not look to the north, he never did see the truck and he never stopped at any time or looked out for oncoming traffic.

As against the testimony of plaintiff and his witnesses, defendant Stroh testified that he approached Plymouth Street at about 25 miles per hour; that no one was in the crosswalk or at the corner; that he did not see plaintiff or any other pedestrian; that at the time of the collision plaintiff was about 25 feet south of the crosswalk, going eastward, and that about three-fourths of the truck had already passed over the south line of the crosswalk; that he swerved the truck in an attempt to avoid the collision and brought it to a stop in about 20 feet; that on alighting Stroh found plaintiff lying flush

with the rear end of the truck. In addition to the foregoing, defendants called Harold Roach and his wife, who were strangers to all parties. The substance of their testimony is that they were driving south on Long Beach Boulevard with the intention of stopping at a photo laboratory the second door south of Plymouth on the west side of the boulevard; that as they crossed the intersection they saw no one in the crosswalk or standing at the southwest corner; that after passing Plymouth they stopped parallel to the second car parked at the curbing, preparatory to visiting the photo laboratory, and then pulled forward to a point between the second and third cars in order to open the door of their car; that they then observed plaintiff for the first time, opposite their car; that Mrs. Roach observed plaintiff steady himself with his right hand on the rear of the second car and step off the curb into the street; that as he did so he obstructed her view so that she could not see the sign on the window; that in a moment Mr. Roach observed plaintiff opposite him in the street, then heard the impact and saw the truck come to a standstill about 35 feet south of the crosswalk; that Mrs. Roach then saw plaintiff lying in the street opposite the front door of their automobile.

There is nothing inherently improbable in the testimony of either Mr. Stroh or of Mr. and Mrs. Roach. The testimony detailed by the latter two alone was sufficient to justify the finding of the jury. Plaintiff's unheralded attempt suddenly to emerge from the rear of the second car parked at the curbing and to step into and proceed across the boulevard at a point some 25 feet south of the crosswalk was proof of such negligence as might materially contribute to the collision and to his injuries. We agree that in case of conflict the evidence favoring a verdict must be substantial (*Chase* v. *Jonkey*, 12 Cal. App. (2d) 365 [55 P. (2d) 1229]), but we are satisfied that the evidence presented on behalf of defendants abundantly fulfills that requirement.

(2) Plaintiff has assigned a number of instructions proposed by defendants as constituting prejudicial error. We have carefully reviewed all of them along with the criticisms of plaintiff. While a number of those criticised should have been omitted because they are formula instructions, and others of them might have been improved by omitting argumentative forms, words and phrases, yet we cannot say that any one of them prejudiced plaintiff's case. Each states the

law as applied to some phase of the testimony. Each of such instructions was predicated upon the two diverse trends of the evidence: (1) as to whether plaintiff cautiously stepped out into Long Beach Boulevard and continued within the crosswalk to pass over the boulevard, and (2) as to whether he stepped from behind a parked vehicle at a point some distance south of the crosswalk and proceeded across without looking to the north, from which traffic was coming. We again suggest the advisability of conforming instructions with the California Jury Instructions, Civil, sometimes referred to as BAJI, prepared by the Superior Court of Los Angeles County. A more generous use of such forms and a more consistent adoption of the system of stating the law free from unnecessary verbiage, as indicated by such forms, is calculated to diminish the causes for appeals and at the same time will serve as insurance against the confusion of juries. But solely because those forms were not used is not within itself a sufficient ground for reversing a judgment, so long as the instructions state the law. A discussion of a few of the assignments will suffice.

Defendants' instruction number 5 stated that the jury was required to find that the driver was under duty to exercise only reasonable care in keeping a lookout ahead and in keeping the car under control. But it was not vicious because it did not define reasonable care or did not reflect the true relationship between a pedestrian and a motorist. Its evident purpose was to emphasize the principle that a motorist is not obligated to anticipate every possible action of persons upon the highway but that it is his duty to act with reasonable care. The term "reasonable care" was not calculated to mislead the jury. The word "reasonable" is an ordinary word and in common use, and is familiar to the average person. It occurs frequently in statutes that were intended for the daily guidance of laymen (Veh. Code, § 510). In any event, it means the amount of care exacted of the motorist under the circumstances detailed by the evidence. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82, 83, 97 [239 Pac. 709, 41 A. L. R. 1027].) It could have meant nothing other than that the driver was not required to exercise excessive or extraordinary care in the operation of the automobile. (*Rush* v. *Lagomarsino*, 196 Cal. 308 [237 Pac. 1066] ; *Hatzakorzian* v. *Rucker-Fuller Desk Co., supra.*) BAJI instructions 108-C

and 108-D were both given to the jury.* They require that both motorist and pedestrian exercise ordinary care; that the driver must be conscious of operating an engine capable of immense and potential danger, and that the pedestrian must be conscious of the fact that he is in the midst of such dangers on the highway and guard against the possibility of injury apparent to a careful, prudent person.

■ Defendants' instruction number 7 is criticized because it stated that all that is required of defendants to defeat plaintiff's case is to prove by a preponderance of the evidence that some act of negligence on the part of plaintiff proximately contributed even in the slightest degree to the happening of the accident, and that it is not necessary to establish the contributory negligence beyond all reasonable doubt. The instruction was not confusing because of its failure to define reasonable doubt. Since the reasonable doubt rule was not applicable, there was no occasion for its definition.

■ Defendants' eighth instruction, after defining contributory negligence and after stating that it must have contributed directly and proximately to the injuries sustained in order for it to bar recovery, advised the jury that plaintiff could not recover if it should be determined from the preponderance of the evidence that he was guilty of a want of ordinary care which contributed in any degree to the injuries sus-

---

*108-C  Degree of Caution Involved in Ordinary Care.

While it is the duty of both the driver of a motor vehicle and a pedestrian using a public roadway, to exercise ordinary care, that duty does not require necessarily the same degree of caution from each. The driver of a motor vehicle, when ordinarily careful, will be alertly conscious of the fact that he is in charge of a machine capable of projecting into serious consequences any negligence of his own. Thus his caution must be adequate to that responsibility—as related to all the surrounding circumstances. A pedestrian, on the other hand, has only his own physical body to manage and with which to set in motion a cause of injury. While, usually, that fact limits his capacity to cause injury, as compared with a vehicle driver, still, in exercising ordinary care, he, too, will be alertly conscious of the mechanical power acting, or that may act, on the public roadway, and of the possible serious consequences from any conflict between himself and such forces. And the caution required of him is measured by the possibilities of injury apparent to him in the conditions at hand, or that would be apparent to a person of ordinary prudence in the same position.

108-D  Duty of Driver—Vigilance—Control of Car.

It is the duty of the driver of a motor vehicle, using a public highway, to be vigilant at all times and to keep the vehicle under such control that, to avoid a collision, he can stop as quickly as might be required of him by eventualities that would be anticipated by an ordinarily prudent driver, in like position.

tained. No prejudice could arise because of the failure of that instruction to define want of ordinary care. Its meaning is as well known as is that of reasonable care. Not only is the meaning of the word ''ordinary'' known to the average person, but its significance was made clear in other instructions defining negligence, given at the request of plaintiff.

Defendants' instruction number 9 consists of two elements: (1) the use of public highways is a privilege to which all citizens are equally entitled; (2) the doctrine of contributory negligence is to control if any negligence of plaintiff contributed to the collision and injuries. If neither party had a superior right to be upon Long Beach Boulevard, no prejudice could have resulted from a. statement of the first element. (*Rush* v. *Lagomarsino, supra; Raymond* v. *Hill,* 168 Cal. 473 [143 Pac. 743].) Whether the plaintiff had the right of way or exercised a sufficient amount of ordinary care which the circumstances required of a prudent person was for the determination of the jury. (*Salomon* v. *Meyer,* 1 Cal. (2d) 11 [32 P. (2d) 631]; *Mitrovitch* v. *Graves,* 25 Cal. App. (2d) 649, 653 [78 P. (2d) 227]; *Lavin* v. *Fereira,* 10 Cal. App. (2d) 710, 712 [52 P. (2d) 518]; *Bush* v. *Southern Pacific Co.,* 106 Cal. App. 101, 108 [289 Pac. 190]; *White* v. *Davis,* 103 Cal. App. 531 [284 Pac. 1086].) They fairly so determined upon conflicting evidence. Because the instructions required the driver to exercise a greater amount of caution (*Raymond* v. *Hill, supra; Dawson* v. *Lalanne,* 22 Cal. App. (2d) 314 [70 P. (2d) 1002]), such rule did not excuse plaintiff from exercising ordinary care. If he was walking at the place fixed by the testimony of Mr. Roach, he was under positive duty to yield the right of way to the truck (*Chase* v. *Thomas,* 7 Cal. App. (2d) 440, 443 [46 P. (2d) 200]), and hence instruction number 9 was applicable. By sections 562 and 560, respectively, of the Vehicle Code a pedestrian is required to yield the right of way if crossing a street outside of a marked crosswalk, while the motorist is required to yield the right of way to the pedestrian if the latter is crossing the street within a marked crosswalk. Both sections were read to the jury. BAJI Instruction 108-C requires that plaintiff must have exercised ordinary care but that he too should have been alertly conscious of the dangers on the street. It was clearly the meaning of defendants' instruction number 9 that plaintiff could not recover if any negligence on his part contributed proximately and directly

to the collision. It did not relieve either of the parties of his duty as defined by BAJI 108-C.

As a final illustration of plaintiff's criticisms of defendants' instructions which were read to the jury, we take defendants' instruction number 10. It consists of two parts, namely (1) an abstract statement of the doctrine of imminent peril, and (2) an application of that doctrine to the evidence presented in this case. It does not purport to include all of the evidence. In order to enable the jury to apply the facts before them the instruction says that if the jury finds that plaintiff appeared in the street in such a manner as to constitute a confusing emergency, the driver, if proceeding with ordinary care, was not required to exercise the highest degree of care to avoid a collision, but only ordinary care. It left for the jury's determination whether the driver was acting with ordinary care under all circumstances, and whether plaintiff's appearance constituted a confusing emergency. The criticism of this instruction that it failed to define ordinary care is utterly without merit. That term was thrice defined elsewhere in the instructions as that degree of care which an ordinarily prudent person would exercise under all the surrounding circumstances.

Thus we might extend the volume of this opinion by a meticulous discussion of each of the criticized instructions and with the same result, to wit: that no prejudicial error appears.

Throughout his brief plaintiff has proceeded upon the assumption that the evidence was not contradictory and that the jury had found that plaintiff with due caution stepped from the curb into the marked crosswalk and, while lawfully and cautiously proceeding, was run down by the truck. In the first place, the evidence of Mr. and Mrs. Roach as to the manner in which plaintiff undertook to cross the boulevard appears from the record to be more convincing than the evidence of plaintiff and his witnesses. But aside from the evidence of the Roach couple, it must be borne in mind that the statutory rules for the guidance of persons using a public street prescribe only the minimum measure of care to be exercised, and that whether a traveler has used sufficient care under the circumstances is to be determined by the jury. (*Bush* v. *Southern Pacific Co., supra.*) As circumstances vary, the amount of ordinary care required of a motorist or

of a pedestrian will vary. There is no such thing as absolute rules for the conduct of men in their civil relations. Rights are enlarged and duties are diminished with change of circumstance. A pedestrian may not ''proceed blindly and in reckless disregard of obvious danger.'' (*Fischer* v. *Keen,* 43 Cal. App. (2d) 244 [110 P. (2d) 693].) For a pedestrian to yield when outside of a marked crosswalk is not the end-all of his duties. He must at all times be reasonably on the alert. When the pedestrian is within the crosswalk the motorist must yield and let him pass over; but when he crosses the street outside of the marked crosswalk he must yield and let the motorist continue on his way. But in any event neither is ever relieved of his duty to exercise reasonable care. The pedestrian has a duty to look in the direction of anticipated dangers and to continue to be alert to safeguard against injury. (*Lavin* v. *Fereira, supra.*)

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.