[Civ. No. 15490. Second Dist., Div. One. May 21, 1947.]

ETHEL D. EDWARDS et al., Appellants, v. GUERDON E. McCORMICK et al., Respondents.

Henry G. Bodkin, Bodkin, Breslin & Luddy, G. Stuart Silliman and Peter E. Giannini for Appellants.

Parker, Stanbury & Reese, Harry D. Parker, Raymond G. Stanbury, Richard E. Reese and White McGee, Jr., for Respondents.

DORAN, J.—This is an appeal by plaintiff from the judgment following a verdict for defendant in an action for damages resulting from an accident.

The facts briefly are as follows: Defendant was driving east on Olympic Boulevard in Los Angeles about midnight; Olympic Boulevard is a four-lane highway with a double white line in the center thereof and a single white line dividing the two lanes of traffic in each direction east and west. Defendant was driving east on Olympic in the southern lane; there was little traffic; Stephen Louis Edwards crossed Olympic on the east side of Amalia Street from the northeast corner of Olympic and Amalia to the southeast corner; while so doing he was struck by defendant's car and killed. Clyde S. Leaker, who happened to be following about one hundred feet behind, testified that defendant's car was traveling about thirty miles an hour. Leaker's description of the accident is in part as follows:

"Q. As you were in Atlantic Boulevard did you observe any one at the northeast corner of Amalia and Olympic? A. Yes, I did. There was a pedestrian there, walking south.

"Q. Walking south? A. Yes.

"Q. Did you see him enter the street? A. I saw him—first saw him just about the time he stepped off of the curb into the street.

"Q. Did you observe the manner in which he walked? A. Well, it was quite a brisk pace—yes. He was walking erect and fairly brisk. Not fast, but walking right along." . . .

"Q. Now, how far, if at all, was this man, the man who was killed, how far was he across that highway when you noticed any change in his speed? A. He was within about 3 feet of the southerly white line. About 3 feet north of the southerly white line, approximately.

"Q. Approximately 3 feet—— A. North.

"Q. Of the white line? A. Yes.

"Q. In other words, he had walked that distance in the same brisk walk he had been going before, is that the idea? A. Yes. . . .

"Q. By Mr. Bodkin: At that time did the McCormick automobile slow down at all? A. No.

"Q. He didn't slow down? A. No. The red taillights did not come on at all until after the accident.

"The Court: What was that answer?

(Answer read.)

"The Witness: By that I mean the brake lights—stop lights.

"By Mr. Bodkin: Then what did the man do about going across? A. The pedestrian began to run at that point, took about possibly one running step before he got in the path of the car, and he was more or less screened from my view by the car at that time. Shall I continue? The next I saw him his feet went up over the top of the car from the right hand side of the car."

Defendant testified, "I didn't see the man until the impact" and further:

"Q. You are positive you had not seen Mr. Edwards walking that distance from the center line down to a distance of about three or four feet south of the white line? A. No, sir.

"Q. And as you approached that part of the highway you drove right along here in your automobile, crossing Amalia Street, you were looking straight ahead, were you not? A. Yes, sir.

"Q. And your lights extended at least to the center of the highway, didn't they? A. I couldn't say on that, sir, how far they extended.

"Q. Do you know what prevented you from seeing this man right in front of your car? A. I do not, sir.

"Q. In other words, you just didn't see him, is that correct? A. I did not see him."

Appellant contends in substance that deceased was free from contributory negligence as a matter of law and that, "the court erred in refusing to instruct the jury as requested by plaintiffs that defendant was guilty of negligence as a matter of law."

Appellant argues that the judgment cannot be sustained because, "there is no evidence of contributory negligence on the part of deceased, if the defendant is shown to have been guilty of negligence which was a proximate cause of the death, for under such circumstances plaintiffs are entitled to the presumption that the deceased obeyed the law." It is further argued in substance that defendant's failure to yield the right of way was negligence *per se* and that this act on the part of defendant was the "sole cause of the death of deceased."

It is pointed out in reply that, "Respondent was traveling at a very moderate rate of speed—twenty-five to thirty miles per hour. He was on a wide, paved street that was carrying little traffic. Under all the evidence, he stopped within twenty-four to forty-five feet after seeing the deceased and without leaving skid marks. He was observing the street and intersection ahead of him as he approached the point of impact. There was nothing about his conduct that could reasonably be said to have been negligent, unless it be his failure to see the pedestrian before he did. In this connection it should be noted that the deceased was wearing dark clothes, and further that there was testimony that the sky was somewhat overcast or cloudy. The light on the northeast corner, from which the deceased started out, was hooded."

The recent case of *Satterlee* v. *Orange Glen School District of S. D. Co.,* 29 Cal.2d 581, 590 [177 P.2d 279], appears to be in point. In that case, which involved an automobile collision and an alleged violation of the Vehicle Code, the court, quoting from *Scalf* v. *Eicher*, 11 Cal.App.2d 44, 54 [53 P.2d 368], said: "Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether

the violation was excusable or justifiable are questions of fact except in a case 'where '. . . the court is impelled to say that from the facts reasonable men can draw but one inference. . . .' '' It was therefore held proper for the trial court to refuse a requested instruction that plaintiff's violation of the Vehicle Code provisions relating to right of way constituted negligence, where such instruction did not tender the issue whether the circumstances were such as to excuse violation. There was a similar holding in *Combs* v. *Los Angeles Railway Corp.*, 29 Cal.2d 606 [177 P.2d 293].

■ In the instant case, as commented upon in respondents' brief, ''It was for the jury to decide whether respondent's failure to see the deceased was a negligent failure.. His failure to yield the right of way arose from his failure to see the pedestrian before he did; the two are inextricably intertwined. Hence it would have been an invasion of the province of the jury for the court to have laid down an inflexible rule that if respondent did not yield the right of way he was negligent as a matter of law.'' Under the evidence disclosed by the record, negligence and contributory negligence were questions of fact and not of law. The jury by its verdict resolved such questions against the appellants' contentions and there is substantial evidence in support of the verdict and judgment. Under such circumstances there can be no interference by an appellate tribunal.

■ The appellants insist that ''The verdict and judgment are against the law, in that deceased had a right to assume defendant would obey the law (and yield the right of way), and in that deceased being confronted by a sudden peril he was not guilty of contributory negligence in attempting to pass in front of defendant's automobile.'' It is also argued that ''plaintiffs are entitled to the benefit of the presumption that the deceased obeyed the law in that he exercised ordinary care for his own safety and therefore the verdict was against the evidence if the defendant was guilty of negligence.'' These contentions, however, proceed on the assumption that the defendant was, and the deceased was not, guilty of negligence in the situation presented. And, as already indicated, such matters involve questions of fact, not of law. Neither a presumption of due care on the part of the deceased, nor any right to assume that respondent driver would yield the right of way, can alter this situation,—or, in fact, do more than merely raise a conflict in the evidence. As pointed out in respondents' brief, ''It is clear that a

pedestrian has no privilege of relying on right of way blindly or in the face of obvious danger." (*Fischer* v. *Keen*, 43 Cal. App.2d 244 [110 P.2d 693]; *Reed* v. *Stroh*, 54 Cal.App.2d 183 [128 P.2d 829].)

Reversible error is predicated upon the admission of evidence to the effect that, previous to the accident, "the deceased had visited a restaurant where beer was served and two bars." Appellants' argument is that this evidence should have been excluded on the ground that it was merely circumstantial and was introduced "with the sole intent of prejudicing plaintiffs in the eyes of the jury." The record indicates, however, that plaintiffs' attorney, on the direct examination of various witnesses, brought up the issue of possible intoxication by inquiring whether the witnesses had smelled "any liquor on his breath." The matter of intoxication does not appear to have been an improper subject of inquiry, and in any event, as mentioned in the briefs of both parties, "respondent was only able to prove that Mr. Edwards had the customary one glass of beer." Under these circumstances, no reversible error is apparent.

The instructions given, when viewed as an entirety, do not appear to have been prejudicially erroneous. Among other things it is to be noted that section 560 of the Vehicle Code, providing that the driver of a vehicle shall yield the right of way to a pedestrian, etc., was read to the jury verbatim. To have declared that the driver in this case was, as a matter of law, guilty of negligence, would, under the evidence, have been an unwarranted invasion of the province of the jury.

No error appearing in the record, the judgment is affirmed.

York, P. J., and White, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 17, 1947. Carter, J., and Traynor, J., voted for a hearing.