[Civ. No. 4905.   Fourth Dist.   Mar. 1, 1955.]

ERNEST A. JEFFS, Appellant, v. HAROLD GLEN
LaGORE, Respondent.

Dorsey, Bultman & Bianchi for Appellant.

Mack, Bianco & King for Respondent.

GRIFFIN, J.—A jury verdict for defendant was obtained in an action by plaintiff and appellant, a pedestrian, against defendant and respondent, driver of an automobile, in an intersection accident, resulting from a collision of defendant's car with the pedestrian in a marked crosswalk.

The questions presented are the sufficiency of the evidence to support the verdict, and claimed errors in giving and refusing certain instructions.

About 10 a. m. on October 17, 1951, plaintiff, then about 77 years of age, was attempting to cross 18th Street at M Street, in Bakersfield. Eighteenth Street runs in a general east-west direction and M Street in a north-south direction. Each street is 54 feet 6 inches in width. Eighteenth Street is a through boulevard and stop signs are indicated for traffic entering it from M Street. Eighteenth Street is divided by a center white line and there are painted white-line crosswalks 14 feet wide.

Plaintiff testified he was standing on the curb at the northwest corner of the intersection and looked in both directions for approaching traffic before he stepped into the street to go to the southwest corner of the intersection, walking in

the center of the crosswalk indicated, and that no cars were noticed by him approaching from the east. He testified that as he was almost to the center line of 18th Street (the evidence is not clear as to the spot but indicates that it was between 3 and 6 feet north of the center line) he stopped and gave a car (the Waters car) approaching from the west, the "highball to go on through," and that that car passed in front of him on the south side of 18th Street near the center line. He then testified that he, at that time, looked to the east when he heard the brakes screech on a car (defendant's car) approaching him from the east and traveling on the north side of 18th Street near the center line; that it was then 10 or 15 feet from him; that he tried to get out of the road by proceeding onward but could not make it, and the next thing he knew he was hit. Apparently there was no other traffic on the street near that intersection. The place of impact was fixed at a point about 3 feet north of the center line and in the crosswalk. Plaintiff suffered a broken leg and considerable other injuries.

On cross-examination defendant offered in evidence plaintiff's deposition in which plaintiff testified that he stepped from the curb out into the street "a little ways . . . some distance . . . about ½ way . . . not quite to the middle . . . about ¼ of the way across the street," and after looking in both directions he gave the Waters' car the "highball"; that at that time, after he had taken a few steps, he heard the screeching of brakes, looked up and for the first time saw defendant's car coming from the east, and that defendant started slowing down and his car was then about 10 feet from him. He later testified therein that he thought he had seen defendant's car "back there . . . on the street" before defendant started to put on his brakes; and he thought "he had plenty of room to go around me"; that the first time he saw the car it was "possibly fifteen or twenty feet east" of where he was standing. The brake skid marks commenced to show 10 feet east of the crosswalk. The requirement as to stopping distance when traveling at 25 miles per hour is 58 feet. (Veh. Code, § 670.)

The witness Waters corroborated the plaintiff's testimony in general and he specifically stated that he did not notice defendant's car approaching on 18th Street at the time plaintiff waved him by, but after he proceeded on into the intersection, about the middle of it, he heard the squeal of brakes and, to his left, he observed a car going west on 18th Street

and he immediately remembered plaintiff being in the cross-walk so he looked in his rear-vision mirror and plaintiff appeared to "kind of be trying to run," and he was struck by defendant's car at a point about 6 feet north of the center line in the crosswalk; that defendant's car did not swerve to the left or right and there was about room enough for defendant's car to pass between plaintiff and the parked cars on the north side of the street.

Defendant testified he was a truck driver and was driving a Chrysler west on 18th Street near the center line at about 25 miles an hour; that as he approached the intersection he saw something flash to his right and thought it was a car approaching; that he looked back and "I was about in the middle of the *block* by that time" (he indicated a place on a diagram marked "L-1"). The diagram is not before us and it is difficult to determine where that place was, but from the testimony that followed it indicates that the witness meant the middle of the *intersection* rather than *block*. He testified that at that point and at that time he saw plaintiff just to the right of his right front fender walking "medium" with his face looking to the west; that he applied his brakes as soon as possible but was not able to stop in time; that he believed he was traveling about 10 miles per hour when his car hit plaintiff who was then about "mid-line" in front of defendant's car hood. He then testified he was looking straight ahead at all times until he momentarily glanced away, as indicated, and that he "was not in no particular hurry looking back"; and that there were no cars or other obstructions between his car and plaintiff at any time.

Police officers indicated there were about 35 feet of skid marks from the front wheels and 25 feet from the rear wheels of defendant's car in a straight line, commencing 10 feet east of the crosswalk and the left-hand marks were about 18 inches north of the center line of 18th Street.

Immediately after the accident defendant told the officers about the same story here related except the part about defendant's momentarily glancing away. They said that defendant gave no reason for not seeing plaintiff in the crosswalk at that time. He further testified he had a conversation with plaintiff at the hospital and plaintiff told him that as he was about to cross 18th Street he saw a vehicle "approaching the intersection" from the east; that it was not then in the intersection; that he felt sure he had time to go across the street before

it arrived and did not know the car was going to hit him until it did. There was expert testimony as to how many feet per second a car would go traveling at various speeds.

It is apparent from the evidence that defendant was guilty of negligence in not keeping a proper lookout ahead, in not keeping his car under proper control, and in not anticipating the presence of a pedestrian in the crosswalk and failing to yield the right of way. (Veh. Code, §§ 505, 560, subd. (a); *Gray* v. *Brinkerhoff*, 41 Cal.2d 180 [258 P.2d 834].)

Defendant alleged contributory negligence of plaintiff. There was sufficient evidence, if believed by the jury, that plaintiff was guilty of contributory negligence which would bar a recovery. (*Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833 [161 P.2d 673, 164 A.L.R. 1]; *Edwards* v. *McCormick*, 79 Cal.App.2d 800 [181 P.2d 58].) ■ The fact that a pedestrian is in a crosswalk does not necessarily establish his freedom from negligence. ■ It is the duty of a pedestrian to exercise reasonable care while crossing a street in a marked crosswalk, and to continue to be alert to safeguard against injury, and such duty continues throughout his passage. (*O'Brien* v. *Schellberg*, 59 Cal.App.2d 764 [140 P.2d 159].) The implied finding of the jury in this respect has evidentiary support.

Even in view of this finding, plaintiff contends that there were sufficient facts established to submit the last clear chance doctrine to the jury under proper instructions, and that the trial court erred in refusing plaintiff's instructions on that theory of the case.

If we take the sworn testimony of the respective parties to this action at the trial, it is clear that there was not sufficient evidence to support a finding of the jury that defendant observed the precarious position of plaintiff in the crosswalk at any time prior to the time he was in the intersection about 10 to 20 feet from plaintiff. The fact that defendant then applied his brakes for the first time indicates that it was at that point he first observed plaintiff in the crosswalk in a position of danger. There was no evidence of previous screeching of brakes or of other skid marks on the street. The only evidence that might indicate that plaintiff might have previously seen defendant comes from the testimony of the police officer in which it is claimed by him that plaintiff told him at the hospital that as plaintiff was about to cross 18th Street he saw a vehicle approaching the intersection "from the east" and felt sure he had time to go across the street. Apparently

this was when plaintiff was on the curb at the northwest corner of the intersection, and had no application to his conduct and the observations he made while in the crosswalk near the point of impact. ▆▆ It is apparent, then, that the evidence substantially shows that the first time defendant discovered plaintiff in this position of peril, there was no last *clear* chance for defendant to avoid the accident and accordingly the evidence does not substantially show that plaintiff has brought himself within the well-established rules so frequently set forth in the decisions in reference to the application of the doctrine. The trial court, under the evidence, was justified in refusing to give the proffered instruction. (*Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223 [28 P.2d 932]; *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915]; *Selinsky* v. *Olsen,* 38 Cal.2d 102, 104 [237 P.2d 645]; *Peterson* v. *Burkhalter,* 38 Cal.2d 107 [237 P.2d 977]; *Rodabaugh* v. *Tekus,* 39 Cal.2d 290 [246 P.2d 663]; *Ralston* v. *Hewitson,* 82 Cal.App.2d 143 [185 P.2d 644].)

▆▆ It is next argued that the court erred in refusing plaintiff's instruction to the effect that both the driver and pedestrian are charged with the same degree of care, but the amount of care exacted of the driver of a motor vehicle is far greater than the amount of care exacted of a pedestrian, citing *Pinello* v. *Taylor,* 128 Cal.App. 508, 514 [17 P.2d 1039]; *Dawson* v. *Lalanne,* 22 Cal.App.2d 314 [70 P.2d 1002]; *Broun* v. *Blair,* 26 Cal.App.2d 613 [80 P.2d 95]; and *Kuist* v. *Curran,* 116 Cal.App.2d 404, 408 [253 P.2d 281].

This form of instruction was criticized in *Warnke* v. *Griffith Co.,* 133 Cal.App. 481, 496 [24 P.2d 583] [hearing denied by the Supreme Court] as being confusing to the jury where it was stated that in order to exercise the same degree of care defendants were required to exercise a greater amount of care. See also note BAJI 201-E; *Schulman* v. *Los Angeles Ry. Corp.,* 44 Cal.App.2d 122, 128 [111 P.2d 924]; and *Reed* v. *Stroh,* 54 Cal.App.2d 183 [128 P.2d 829].

We believe the principle attempted to be stated was sufficiently covered by other given instructions which were to the effect that negligence is a relative term; that the amount of caution required "varies in direct proportion to the danger known to be involved" in the undertaking; and that "it follows that in the exercise of ordinary care, the amount of *caution* required will vary in accordance with the nature of the act and the surrounding circumstances. To put it in another way, the amount of caution required by the law

increases as does the danger that should be apprehended'';
[this was given in the language of BAJI 102A]; that the duty
of the driver of an automobile ''requires him to be vigilant
at all times, keeping a lookout for traffic and other conditions
to be reasonably anticipated, and to keep the vehicle under
such control that, to avoid a collision with any person or with
any other object he can stop as quickly as might be required
of him by eventualities that would be anticipated by an ordi-
nary prudent driver in like position''; and that in determining
the question of negligence the jury should take into account
the situation and conduct of both parties. It also instructed
on the basic speed law and the law pertaining to the require-
ment in reference to yielding of the right of way to a pedes-
trian in a crosswalk, in the language of BAJI [1950 Supp.]
201 [alternate.]

In *Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71 [265 P.2d
513], the Supreme Court discussed the particular instruction
here offered and refused, and held that in view of the other
instructions given on the subject matter no prejudicial error
resulted. We have reached the same conclusion in the instant
case.

Next, plaintiff complains of an instruction offered by
defendant and given by the court on the doctrine of imminent
peril. The instruction recites in part that ''A person who,
without negligence on his part, is suddenly and unexpectedly
confronted with peril, arising from either the actual presence,
or the appearance, of imminent danger to himself or to others,
is not expected, nor required, to use the same judgment and
prudence that is required of him, in the exercise of ordinary
care, in calmer and more deliberate moments. . . .'' The
argument is that the instruction was correct as an abstract
proposition of law but that it had no bearing on the issues
because the evidence showed defendant was negligent as a
matter of law; that he was not suddenly and unexpectedly
confronted with peril, and that the alleged emergency was
occasioned by defendant's own negligence. This instruction
was not only applicable to defendant, if the jury believed he
was free from negligence, but was also applicable to plaintiff
if the jury believed plaintiff was not negligent. Since it
appears from the evidence that defendant clearly was negli-
gent (*Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 186 [258 P.2d 834]),
the instruction would be inapplicable and no doubt was dis-
regarded so far as it pertained to the defendant. It may
likewise have been disregarded as to plaintiff, due to his

claimed contributory negligence, or it may well have been applied to the plaintiff and the jury, nevertheless, remained convinced of his contributory negligence. No prejudicial error appears. (*Stickel* v. *Durfee*, 88 Cal.App.2d 402, 407 [199 P.2d 16]; *Armstrong* v. *Day*, 103 Cal.App. 465, 470 [284 P. 1083]; *Emery* v. *Los Angeles Ry. Corp.*, 61 Cal.App.2d 455, 462 [143 P.2d 112]; *Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71, 78 [265 P.2d 513]; *Hartshorne* v. *Avery*, 130 Cal.App.2d 517 [279 P.2d 123].)

The next point involves the modification by the court of a proffered instruction of plaintiff. It sets forth the provisions of section 560 of the Vehicle Code and reads in part: "(a) The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked cross-walk at an intersection. . . . A violation of the foregoing rule is negligence." (Last sentence struck out by the court.) Plaintiff offered an instruction in the language of BAJI 149-A to the effect that a violation of that section was negligence as a matter of law. This limited instruction was refused. It is contended that a violation of a statutory requirement is negligence as a matter of law and the court erred in not giving the instruction as offered, citing such cases as *Clinkscales* v. *Carver*, 22 Cal.2d 72, 76 [136 P.2d 777]; *Gallop* v. *Sparks-Mundo Engineering Co.*, (Cal.App.) 263 P.2d 104; and *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 588 [177 P.2d 279], which held that an act or failure to act below a statutory standard is negligence *per se*, or negligence as a matter of law, but that a presumption of negligence arising from performance of an act in violation of a statute is not conclusive but may be rebutted by showing that the act was justified or excusable under the circumstances. It also held that in a negligence action predicated on the violation of a statute it is necessary to show that the violation was a proximate contributing cause of the injury.

A close question is presented from the evidence and all the circumstances related as to whether defendant was guilty of violating that section as a matter of law. In most of the reported cases where there is a conflict in the evidence, that question is usually left to the jury to determine. Standing alone, therefore, that instruction, as submitted, is not complete unless it is followed by an instruction to the effect that

---

*A hearing was granted in the Supreme Court on January 13, 1954.

a violation of law is of no consequence unless it is a proximate cause of the injury found by the jury to have been suffered by the plaintiff. (*Satterlee* v. *Orange Glenn School Dist.*, *supra*; BAJI 149[b].) In addition, it should be left to the jury, under proper instructions, whether such violation was excusable or justified, unless the court is impelled to say that from the facts produced reasonable men can draw but one inference. This question was squarely presented in *Edwards* v. *McCormick*, 79 Cal.App.2d 800 [181 P.2d 58] [hearing denied by the Supreme Court], where a pedestrian was struck in a marked crosswalk by defendant's car. A verdict for defendant was affirmed on appeal. The court said, at page 803:

"The recent case of *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 590 [177 P.2d 279], appears to be in point. In that case, which involved an automobile collision and an alleged violation of the Vehicle Code, the court, quoting from *Scalf* v. *Eicher*, 11 Cal.App.2d 44, 54 [53 P.2d 368], said: 'Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether the violation was excusable or justifiable are questions of fact except in a case where ". . . the court is impelled to say that from the facts reasonable men can draw but one inference . . ."' It was therefore held proper for the trial court to refuse a requested instruction that plaintiff's violation of the Vehicle Code provisions relating to right of way constituted negligence, where such instruction did not tender the issue whether the circumstances were such as to excuse violation. There was a similar holding in *Combs* v. *Los Angeles Ry. Corp.*, 29 Cal.2d 606 [177 P.2d 293]. . . ." (See also *Kuehn* v. *Lowthian*, 124 Cal.App.2d 867 [269 P.2d 666]; *Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 184 [258 P.2d 834].)

The court did give several instructions bearing on the subject matter about which plaintiff also complains. It instructed the jury, in several different instructions, to the effect that "If a party to this action violated the statute just read to you, a presumption arises that he was negligent. This presumption is not a conclusive one. It may be overcome by other evidence showing that under all the circumstances surrounding the event the conduct in question was excusable, justifiable, and such as might reasonably have been expected from a person of ordinary prudence. [In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes,

not of his own intended making, induce him, without moral fault, to do otherwise.] [To prove that a violation of a statute . . . such as that charged in this case, was excusable and justifiable, so as to overcome the presumption of negligence, the evidence must support a finding that the violation resulted from causes or things beyond the control of the person charged with the violation.]''

This instruction follows the language of BAJI [1950 Supp.] 149 Alt. [New]. Although the court gave both portions of that instruction indicated within the brackets, which may have led to confusion, the subject matter was nevertheless sufficiently covered. (See headnote BAJI [1950 Supp.] 149 Alternate [New].) The court then instructed the jury that in determining the question of negligence the jury should take into consideration the situation and conduct of both parties at the time of the alleged injuries, as disclosed by the evidence, and if the jury believed from the evidence that the injury complained of was caused by the negligence of the defendant alone then the plaintiff was entitled to recover. Since it is apparent from the evidence that the jury undoubtedly found defendant guilty of negligence in this respect no prejudicial error resulted.

The last complaint involves an instruction offered by defendant and given by the court in the language of section 670 of the Vehicle Code pertaining to adequacy of brakes and maximum stopping distances permitted. The claim is that such an instruction was not applicable to any of the pleadings or issues presented by the evidence.

The adequacy of the brakes, and the distance within which a car should be stopped did bear on the truthfulness of defendant's statement that he was not going over 25 miles per hour at the time indicated. These were proper factors to be considered by the jury.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 27, 1955. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.