CHAPMAN v ROSS

1. CANCELLATION OF INSTRUMENTS—RELEASE—RESCISSION—RESTORA-
   TION OF STATUS QUO.

   The law applicable to the rescission of release agreements re-
   quires that the party seeking to avoid a settlement or release
   must tender back the amount paid, thus returning both parties
   to the status quo; and where no tender has been made, a
   release agreement will be permitted to stand.

2. RELEASE—TORTS—MENTAL DISTURBANCE—EMOTIONAL DISTURBANCE
   —NEGLIGENCE—ACCELERATED JUDGMENT.

   An accelerated judgment for defendant was improperly granted
   with respect to a count in a complaint seeking damages for the
   negligent and intentional infliction of mental and emotional
   disturbance after the signing of a release agreement between
   the parties whereby the plaintiff released defendants from all
   claims up to the date of the agreement, where the release
   agreement made no reference to mental and emotional distress
   suffered by the plaintiff subsequent to the signing of the agree-
   ment; whether the injuries alleged were in fact suffered by the
   plaintiff must be determined by a lower court proceeding.

Appeal from Wayne, Benjamin D. Burdick, J.
Submitted Division 1 March 13, 1973, at Detroit.
(Docket No. 12949.) Decided May 22, 1973.

Complaint by Florence Ballard Chapman, profes-
sionally known as Florence Ballard, against Diana
Ross, Mary Wilson, Cindy Birdsong, Jean Terrell,
Berry Gordy, Jr., Michael Roshkind, Ralph Seltzer,
International Management Company and Motown
Record Corporation, for damages in 11 counts for
misrepresentation, fraud and deceit, breach of con-

REFERENCES FOR POINTS IN HEADNOTES
[1] 13 Am Jur 2d, Cancellation of Instruments §§ 5, 37–43.
[2] 13 Am Jur 2d, Cancellation of Instruments §§ 13–15.

tract, intentional infliction of emotional distress, various accountings, and certain injunctive relief. Accelerated judgment for defendants. Plaintiff appeals. Affirmed as to all but one count and remanded for further proceedings.

*Gerald K. Dent* and *Patmon, Young & Kirk, P. C.* (by *James B. Feaster),* for plaintiff.

*Barris, Sott, Denn & Driker* (by *Donald E. Barris* and *David L. Haron),* for defendants.

Before: FITZGERALD, P. J., and V. J. BRENNAN and O'HARA,* JJ.

FITZGERALD, P. J. Plaintiff appeals as of right from an order granting defendants' motion for accelerated judgment on each of the 11 counts appearing in the complaint. Damages are sought for misrepresentation, fraud and deceit, breach of contract, intentional infliction of emotional distress, various accountings, and certain injunctive relief.

Florence Ballard Chapman was a former member of The Supremes, a well-known vocal group which achieved widespread popularity and financial success in recent years. In 1961, plaintiff Chapman entered into agreements with International Talent Management, Inc. (hereinafter referred to as International) and Motown Record Corporation (hereinafter referred to as Motown). These agreements were renewed in August of 1964 and again in July of 1967. In August 1967, the amount of future royalties and earned monies became a matter of dispute between Motown, International, and plaintiff. After obtaining legal assistance,

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

plaintiff, on February 22, 1968, entered into a general release agreement from all contractual obligations by and between plaintiff, Motown, International, and Berry Gordy, Jr., in consideration of the sum of $160,000. On the same day, three checks totaling this exact amount were delivered to plaintiff's attorney and later deposited in her account. These funds were not tendered back to defendants and remained in the possession of the plaintiff.

The trial court held that the execution of the general release agreement between the parties, coupled with plaintiff's failure to tender back the $160,000 to the defendants, served as a bar to recovery and resulted in the granting of defendants' motion for accelerated judgment pursuant to GCR 1963, 116.1(5).[1]

Plaintiff raises four issues on appeal. The first contends that a jury should have determined the validity of the release executed between the parties. *Farwell v Neal,* 40 Mich App 351 (1972) is controlling on this question. Denial of a jury trial on the issue of the validity of a general release is proper. In this case there was no right to have a jury determine the validity of the general release.

The three remaining issues question the correctness of the trial court's decision that the release agreement between the parties barred all 11 counts appearing in the complaint. It is contended that issues of fact regarding the agreement itself and the alleged misrepresentations antecedent to

---

[1] ".1 Grounds. In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him upon any of the following grounds:

\*   \*   \*

"(5) the claim is barred because of release \* \* \* ."

the execution of the release were erroneously presumed or determined by the trial court. Plaintiff argues that these presumptions and factual determinations made by the trial court require a reversal of the accelerated judgment granted to defendants.

The 11 counts alleged in plaintiff's complaint are separable into those dealing with provisions contained in the release agreement (4, 5, 6, 7, 10 and 11) and those sounding in tort, specifically misrepresentation and the intentional infliction of mental and emotional disturbance (1, 2, 3, 8 and 9).

Counts 4 and 5 seek damages and accountings from defendants Motown and International for alleged breach of contract. However, the contractual relationship between these parties was terminated by the release agreement. Pertinent provisions of the agreement provide:

"1. Artist's obligation to render services pursuant to the Second Recording Agreement and the Extension Agreement is hereby terminated effective on February 1, 1968. * * *

"2. The Second Management Agreement and the Extension Agreement insofar as it refers to personal management activities are hereby terminated effective February 1, 1968 * * * .

* * *

"6. Artist *acknowledges that ITMI has accounted to Artist for all sums due or to become due to Artist on account of personal appearances from the beginning of the First Management Agreement to the date of these presents,* except the sum of $20,195.06, which sum ITMI shall cause to be paid to Artist from the funds in possession of Diana Ross and Mary Wilson upon the execution and delivery of this agreement; and *Artist acknowledges that all items of the accountings furnished to Artist by ITMI including both items of income and items of expense and items of every other description are correct in every respect and that except for the*

*aforesaid sum, Artist further acknowledges that ITMI*
*has heretofore delivered to Artist all property without*
*exception of the Artist which ITMI at any time had in*
*ITMI's possession or control.* (Emphasis added.)

"*7. Artist acknowledges that she has received com-*
*plete and proper accountings of royalties pursuant to*
*the First and Second Recording Agreements and that*
*such accountings are correct in all respects.* Artist
hereby irrevocably bargains, sells, assigns, transfers and
sets over to Motown all of Artist's right, title and
interest in and to any and all royalties, commissions,
fees known or unknown which would otherwise have
become payable to Artist pursuant to the First or
Second Recording Agreements and Artist acknowledges
that neither Motown nor any of its licensees, assignees,
transferees or successors or Diana Ross, or Mary Wil-
son, or Cindy Birdsong, or any other person rendering
services under the name 'The Supremes' or 'Diana Ross
and The Supremes' shall have any obligation to pay
Artist any royalties whatsoever or any share of income
or any other sum. * * * " (Emphasis added.)

Count 6 seeks cancellation of the release agree-
ment because plaintiff was induced to sign based
upon fraudulent misrepresentations made by de-
fendants. Count 7 asserts that as a result of all the
fraudulent misrepresentations enumerated in
Counts 1 through 6 she was induced to enter into
the release agreement with the defendants.

We agree with defendants' contention that the
law applicable to the rescission of release agree-
ments requires that the party seeking to avoid a
settlement or release must tender back the
amount paid, thus returning both parties to the
status quo. *Randall v Port Huron, St C&MC R Co,*
215 Mich 413 (1921); *Kirl v Zinner* 274 Mich 331
(1936); *Carey v Levy,* 329 Mich 458 (1951). No
tender having been made, the release agreement
will be permitted to stand. Counts 10 and 11 seek
an accounting for plaintiff's partnership interest in

The Supremes. However, paragraph 4 of the release agreement specifically provides that plaintiff was to have no right, title, or interest in the name "The Supremes".

"4. Artist covenants and agrees, and hereby ratifies the relevant provisions of the First Recording Agreement, the Second Recording Agreement and the Extension Agreement, *that she has no right, title, or interest in the name 'The Supremes'* and that she will not authorize the use of that name for any purpose whatsoever without limitation; provided that it shall not be a breach of the provisions of this paragraph if a publication or broadcaster not in the control of Artist and without the instigation of Artist, her representatives, or employees, or independent contractors engaged by her, refers to her as a 'former member of The Supremes.' *Without limiting the generality of the foregoing, Artist hereby acknowledges that the tradename 'Supremes' is the exclusive property of Motown and that Artist does not now have and never has had any interest in the ownership of that tradename or any rights therein;* and that Motown may in its absolute discretion from time to time determine the persons appearing as, or rendering services as, the 'Supremes'." (Emphasis added.)

Accordingly, the trial court properly held Counts 4, 5, 6, 7, 10 and 11 barred by the release agreement.

Counts 1, 2 and 3 are based on the tort of misrepresentation. Plaintiff alleges that false and fraudulent misrepresentations were made alleging that plaintiff's performance was adversely affecting the group. It is further alleged that defendants wrongfully concealed from her the extent and amount of personal properties and monies owed to her. Plaintiff contends these misrepresentations were not discovered until after the signing of the release. However, paragraph 9 of the release agreement is applicable to causes of action which

*might have* been brought against defendants at the date the release agreement was signed.

> "9. *Artist hereby, for herself,* her heirs, executors and assigns hereby *generally releases Motown, ITMI and their respective affiliated and subsidiary corporations and their respective officers, directors, stockholders, employees, assignees, licensees, and transferees and Diana Ross, Mary Wilson and Cindy Birdsong of and from any and all claims, actions, suits or demands which Artist now has, has had or might have had on account of any matter or thing known or unknown from the beginning of the world to the date of these* presents." (Emphasis added.)

Counts 8 and 9 seek damages for the negligent and intentional infliction of mental and emotional disturbance. The former count encompasses those injuries suffered up to the time of the signing of the release. Count 9 is restricted to damages suffered after the signing of the release agreement. Paragraph 9, referred to above, bars recovery under Count 8 since that claim might have been brought against defendants based on any matter occurring up to the signing of the release agreement. The same cannot be said relative to Count 9. Paragraph 9, *supra,* makes no reference to mental and emotional distress suffered by the plaintiff *subsequent to* the signing of the agreement. Whether the injuries alleged were in fact suffered by the plaintiff must be determined by a lower court proceeding.

Accordingly, we affirm the trial court's order granting defendants' motion for accelerated judgment as to all counts with the exception of Count 9. The matter is remanded for further proceedings. We retain no further jurisdiction. Costs to abide outcome.

All concurred.