KIRCOS v GOODYEAR TIRE AND RUBBER COMPANY

Docket No. 50959. Submitted May 5, 1981, at Detroit.—Decided August 19, 1981. Leave to appeal applied for.

Louis Kircos and Donald J. Brodowicz were injured when the tire from the sports car for which they were crew members exploded while it was being inflated. The accident took place in the paddock area at a racetrack in Elkhart Lake, Wisconsin, during preparation for a race sanctioned by the Sports Car Club of America. Kircos and Brodowicz, being Michigan residents, brought an action for damages for their injuries in Wayne Circuit Court against Goodyear Tire and Rubber Company, the manufacturer of the tire, Roger Penske Chevrolet, Roger Penske Performance Division, the distributor of the tire, Sports Car Club of America, Inc., the organization sanctioning the race, Lola Cars, Limited, the manufacturer of the race car and wheel upon which the tire was mounted, and Carl A. Haas Automobile Imports, Inc., importer and distributor of Lola Cars, Limited, products. Defendants Sports Car Club of America, Goodyear and Penske moved for accelerated judgment on the basis of a release signed by the plaintiffs which provided that in consideration of being permitted "to enter for any purpose the restricted area" the party signing the release released, waived, discharged and covenanted not to sue "the Sports Car Club of America, Inc., * * * car owner, drivers, pit crews, participants, persons in the restricted area, promoters, sponsors, [and] advertisers". Thomas J. Foley, J., concluded that, since plaintiffs were members of a racing team, the

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 853.
[2] 73 Am Jur 2d, Summary Judgment § 27.
[3] 41 Am Jur 2d, Indemnity § 15.
  Tenant's agreement to indemnify landlord against all claims as including losses resulting from landlord's negligence. 4 ALR4th 798.
  Building contractors liability, upon bond or other agreement to indemnify owner, for injury or death of third persons resulting from owner's negligence. 27 ALR3d 663.
[4] 66 Am Jur 2d, Release § 31.

release was enforceable and granted accelerated judgment. Plaintiffs appeal. *Held:*

1. Since the release is unequivocal in its language exempting defendants from liability for damages sustained under the circumstances described in the release, the release is enforceable against plaintiffs even for injuries resulting from the negligence of those covered by the release.

2. The paddock area of the racetrack was a restricted area within the meaning of the release. Accordingly, since the restricted area provision of the release is applicable, it is unnecessary to determine whether the trial court properly relied upon the participant provision of the release.

3. The release was properly applied in favor of defendants Goodyear and Penske, since Goodyear was an advertiser and Penske was a participant within the meaning of the release.

4. Since the written release signed by plaintiffs prior to the accident justifies the trial court's grant of accelerated judgment, it is unnecessary to determine whether plaintiffs' claims for an acceptance of medical and work-loss benefits also would operate to release the claims for damages contained in their complaint.

Affirmed.

1. MOTIONS AND ORDERS — ACCELERATED JUDGMENT — APPEAL — PLEADINGS — COURT RULES.

Courts, in reviewing a motion for accelerated judgment based on a claim of release, must accept as true all well-pled allegations of the nonmoving party (GCR 1963, 116.1[5]).

2. MOTIONS AND ORDERS — ACCELERATED JUDGMENT — QUESTION OF FACT.

A motion for accelerated judgment should not be granted where factual issues exist.

3. INDEMNITY — CONTRACTS — JUDICIAL CONSTRUCTION.

A contract which purportedly indemnifies a party against his own negligence will be strictly construed against the party who drafts the agreement and the party who is indemnitee.

4. WORDS AND PHRASES — RESTRICTED AREA.

The paddock area of a racetrack which may be entered by the general public only by the securing of a special pass to enter that area and the payment of an additional fee is a restricted area within the meaning of a release which defines "restricted area" as "the area to which admission for the general public is prohibited".

*Clark, Klein & Beaumont* (by *David M. Hayes* and *David H. Paruch),* for plaintiffs.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.,* for Goodyear Tire and Rubber Company.

*Harvey, Kruse & Westen, P.C.* (by *John A. Kruse* and *Michael F. Schmidt),* for Roger Penske Performance Division.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Jeannette A. Paskin* and *William P. Cooney),* for Sports Car Club of America, Inc.

Before: BASHARA, P.J., and N. J. KAUFMAN and J. L. BANKS,* JJ.

PER CURIAM. Plaintiffs appeal as of right from an order of accelerated judgment entered in favor of defendants-appellees on March 25, 1980.

Defendants' motion for accelerated judgment was apparently brought under GCR 1963, 116.1(5). In reviewing motions for accelerated judgment, courts must accept all well-pled allegations of the nonmoving party as true. *Robards v Estate of Kantzler,* 98 Mich App 414, 416; 296 NW2d 265 (1980).

As noted in *Kircos v Goodyear Tire & Rubber Co,* 70 Mich App 612; 247 NW2d 316 (1976), wherein the jurisdiction of the trial court over defendant Haas was challenged, plaintiffs filed their complaint against defendants Goodyear, Penske, Sports Car Club of America, Lola Cars, Ltd., and Carl A. Haas Automobile Imports, Inc., for injuries suffered when a tire exploded while being inflated. Plaintiffs' complaint alleged that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

they were employed as volunteer pit crew members for race car driver Bob Nagle during a racing event known as the Road-America Can-Am, held at Elkhart Lake, Wisconsin, in August, 1972. On August 27, 1972, agents of defendants Goodyear and Penske were engaged in the dismounting of an old tire and the mounting of a new tire on a wheel rim which had been removed from Mr. Nagle's race car, with plaintiffs' assistance. A locking air hose was used to inflate the tire. The air hose was apparently left on for too long a period of time and the tire exploded, injuring plaintiffs.

On October 11, 1979, defendant Sports Car Club of America filed a motion for accelerated judgment, based upon a release which had been signed by plaintiffs. A hearing on defendant Sports Car Club of America's motion, joined by defendants Goodyear and Penske, was held on January 6, 1980. The parties agreed that the accident took place in the paddock area of the racetrack, but the parties disagreed as to whether the paddock area was a restricted area. The trial court concluded that, since plaintiffs were members of a racing team, the release was enforceable:

"*The Court:* I think everyone's theory is abundantly clear as to the court. I understand where you stand and what you are advocating. I am concerned, frankly about the affidavits which are quite equivocal in nature. It appears to the court that they were filed for the purpose of creating the question of fact. The affidavits seem to fly in the face of just undisputed facts, facts which cannot really be disputed. But without deciding that question at this point and in looking at the various documents which have been filed and listening to the arguments, there is no question here we are not dealing with a relationship between the various respondents and the general public. This tends to confuse the issue. We are dealing with respondents and members of the

racing team. I don't care what you call them. Whether you call them go-fers or any other name, they are members of the racing team. They are there for a purpose.

"Now, the release unquestionably is a legitimate contract. It is a method of restricting one's liability from fortuitous events. It is a legitimate form of contract. It is not just restricted to this person and this person. The release is designed to apply to people who are engaged in this type of business, who are either racing cars, involved in the maintenance or furtherance of the purpose. It is a very confined group of people and the world over recognizes racing as a dangerous sport. These people are engaged in a very dangerous sport, no one can deny that, the world over it is recognized. The respondents took the only method, absent the absolute liability as available to protect themselves in a non-dangerous sport, namely through release and waiver of liability and indemnity agreement. It applies to the various areas in which the people are performing, in reliance to the racing of cars and the maintenance of cars and furtherance of these purposes."

When plaintiffs' attorney pointed out that a question of fact remained as to whether the paddock was a restricted area, the trial court responded as follows:

"*The Court:* I do not think that is a controlling question, here. We are not dealing with the member of the public. We are dealing with a member of the racing team, the very person that this type of release is designed to apply to. I do not think that is a controlling, whether general public or otherwise."

After plaintiffs stipulated that their signatures on the release were authentic, the trial court issued its order of accelerated judgment.

On appeal, plaintiffs argue that the trial court erred in granting defendants' motion for accelerated judgment upon concluding that the release

agreement, signed by plaintiffs, barred plaintiffs' cause of action.

As noted in *Farmers Ins Group v Clear,* 94 Mich App 655, 661; 290 NW2d 51 (1980), a defendant may make a motion for accelerated judgment when release is claimed as a defense under GCR 1963, 116.1(5). However, where factual issues exist, it is improper to grant a motion for accelerated judgment. *Baker v Detroit,* 73 Mich App 67, 75; 250 NW2d 543 (1976).

In the instant case, plaintiffs claim the trial court erred in granting defendants' motion for accelerated judgment because fact questions existed as to whether or not plaintiffs' injuries occurred in a restricted area and whether or not defendants Goodyear and Penske were free from liability by virtue of their being participants, promoters, sponsors or advertisers.

The trial court concluded that defendants Goodyear and Penske qualified as being participants, promoters, sponsors or advertisers and that it made no difference whether or not plaintiffs were injured in a restricted area because they were persons participating in the racing event. The first issue is, therefore, whether or not the trial court correctly construed the terms of the release agreement. In *Fireman's Fund American Ins Cos v General Electric Co,* 74 Mich App 318, 323-324; 253 NW2d 748 (1977), the Court stated:

"As a starting point in interpreting this clause, we note that:

" '[t]he general rule in the interpretation of all contracts, including indemnity contracts, is to ascertain the intention of the parties. *Klever v Klever,* 333 Mich 179 [52 NW2d 653] (1952), *Smeader v Mason,* 341 Mich 139 [67 NW2d 131] (1954), *Sobczak v Kotwicki,* 347 Mich

242 [79 NW2d 471] (1956). However, with regard to contracts indemnifying one against his own negligence, it is generally stated:

" ' "It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms." 27 Am Jur, Indemnity, § 15, p 464.

" 'In *Buffa v General Motors Corp,* 131 F Supp 478, 482 (ED Mich, 1955), the court stated:

" ' "As a general proposition, a contract of indemnity which purportedly indemnifies against the consequences of one's own negligence is subject to strict construction and will not be so construed unless it clearly appears from the language used that it was intended to have that effect.

\*   \*   \*

" ' "It is also clear, however, that such clauses [indemnity clauses] are construed most strictly against the party who drafts them and the party who is indemnitee. *Michigan Chandelier Co v Morse,* 297 Mich 41 [297 NW 64] (1941), *In re Traub Estate,* 354 Mich 263 [92 NW2d 480] (1958)." ' *Meadows v Depco Equipment Co,* 4 Mich App 370, 375-376; 144 NW2d 844 (1966)."

In *Tope v Waterford Hills Road Racing Corp,* 81 Mich App 591; 265 NW2d 761 (1978), *lv den* 405 Mich 822 (1979), plaintiff's decedent, Harry Tope, a professional race car driver, was killed when his race car collided with a guardrail at a race which was sponsored by the defendant corporation. Plaintiff filed an action alleging defendant's negligence in the design of the racecourse and in its management of the race. Defendant responded with a motion for accelerated judgment based upon a release agreement signed by plaintiff's decedent. The trial court granted defendant's motion and plaintiff appealed. On appeal, plaintiff claimed that the terms of the release agreement, which

provided in part as follows, were contrary to public policy:

"'IN CONSIDERATION of being permitted to enter for any purpose of the RESTRICTED AREA (herein defined as the area to which admission for the general public is prohibited, including but not limited to the pit area, racing surface and infield, including walkways, concessions and other appurtenances therein) each of the Undersigned, for himself and personal representatives, assigns, heirs and next of kin:

"'1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the Promoter, Racing Association, Track Operator, Track Owner, Landowner, and each of them, their officers, and employees, all for purposes herein referred to as RELEASEES, from all liability to the Undersigned, his personal representatives, assigns, heirs and next of kin for all loss or damage, and any claim or demands therefor, on account of injury to the person or property or resulting in death of the Undersigned, whether caused by the negligence of Releasees or otherwise while the Undersigned is upon the Restricted Area, and * * *.'" *Tope, supra,* 594-595.

The Court concluded that the terms of the above-quoted release agreement were not contrary to public policy. It also stated as follows:

"The waiver and release expressly exempts defendant from liability for damages to the plaintiff caused by defendant's negligence. Construing the indemnity clause strictly against defendant we find the language unequivocal in exempting defendant from liability for damages sustained by the plaintiff because of defendant's own negligence. See *Klann v Hess Cartage Co,* 50 Mich App 703, 705-706; 214 NW2d 63 (1973)." *Tope, supra,* 595-596.

In *Tope,* the release agreement specifically provided that in consideration for being permitted to

enter into the restricted area of the racecourse, defendant was released from liability for any injury occurring while plaintiff's decedent was within a restricted area. Since plaintiff's decedent, a race car driver, was injured while within a restricted area, the Court concluded that the language of the release agreement unequivocally released defendant from liability.

The consideration clause of the release agreement in the instant case provided as follows:

"IN CONSIDERATION of being permitted (1) *in racing events,* to enter for any purpose the RESTRICTED AREA (herein defined as the area to which admission for the general public is prohibited, including but not limited to the pit areas and racing surface), or (2) *in non-racing events, to compete, officiate, observe, work for or for any purpose participate,* each of the Undersigned, for himself and personal representatives, heirs and next of kin:

"1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the Sports Car Club of America, Inc., SCCA Regions, their officers and members, officials, car owners, drivers, pit crews, participants, persons in the Restricted Area, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the event, and each of them, their officers and employees, all for the purposes herein referred to as RELEASEES, from all liability to the Undersigned, his personal representatives, assigns, heirs and next of kin for all loss or damage, and any claim or demands therefor, on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of Releasees or otherwise while the Undersigned is in or upon the Restricted Area, *and/or competing, officiating in, working or for any purpose participating in such event;*

\*   \*   \*

"3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK of bodily injury, death or property damage due to negligence of Releasees or otherwise

while in or upon the Restricted Area, *and/or while competing, officiating in, working or for any purpose participating in such event.*" (Italics in original.)

Since the phrase "to compete, officiate, observe, work for or for any purpose participate" only referred to non-racing events in the consideration clause, plaintiffs argue that if an injury occurred while a person was "competing, officiating in, working or for any purpose participating in such event", the release only applied to persons doing such during non-racing events and that during racing events, defendant Sports Car Club of America, participants, persons in the restricted area, promoters, sponsors, advertisers, owners and lessees were only released from liability for injuries occurring in the restricted area. However, even if we were to accept plaintiffs' construction, we would still be persuaded that the release covered the activities in which they were engaged.

Both parties' briefs on appeal, as well as their statements during oral arguments, clearly indicated that the area in which the injury occurred was not open to the general public. While members of the public could obtain admission to this area, this could only be done by the payment of an additional fee. While plaintiff defines "restricted area" as an area to which the general public was absolutely prohibited, we believe that it is sufficient that in order to enter the paddock members of the public needed to pay an additional fee and secure a pass. We, therefore, believe that the release covered plaintiffs' activities.

On appeal, plaintiffs further claim that a disputed issue of fact existed as to whether defendants Goodyear and Penske were insulated from liability under the terms of the release. The re-

lease agreement provided that the following were released from liability:

"* * * [T]he Sports Car Club of America, Inc., SCCA Regions, their officers and members, officials, car owners, drivers, pit crews, participants, persons in the Restricted Area, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the event, and each of them, their officers and employees * * *."

In our opinion, there was undisputed evidence that defendant Goodyear qualified as an advertiser. Mr. Nagle testified that his race car carried a Goodyear decal. Furthermore, there was undisputed evidence that defendant Penske was a participant. Attached to defendant Penske's brief is a copy of an affidavit sworn to by Gerald Tiffan, defendant Penske's representative at the race in question. He averred that defendant Penske was a participant in the racing event. Since plaintiffs presented no evidence to the contrary, we conclude that the trial court did not err in finding that defendants Goodyear and Penske qualified as indemnitees.

In its brief on appeal, defendant Sports Car Club of America raises a claim that might provide another basis for accelerated judgment in its favor. It is claimed that on March 22, 1973, plaintiff Brodowicz made a claim for medical and loss of work benefits with defendant Sports Car Club of America's insurer and on September 31, 1973 *[sic]*, plaintiff Kircos made a similar "participant's" claim. It is alleged that in plaintiffs' responses to defendants' requests for admissions, plaintiff Brodowicz admitted receiving benefits totaling $4,898.55 and plantiff Kircos admitted receiving benefits totaling $13,537.50.

In *Chapman v Ross,* 47 Mich App 201, 205; 209 NW2d 288 (1973), the Court stated:

"We agree with defendants' contention that the law applicable to the rescission of release agreements requires that the party seeking to avoid a settlement or release must tender back the amount paid, thus returning both parties to the status quo. *Randall v Port Huron, St C & M C R Co,* 215 Mich 413 [184 NW 435] (1921), *Kirl v Zinner,* 274 Mich 331 [264 NW 391] (1936), *Carey v Levy,* 329 Mich 458 [45 NW2d 352] (1951)."

Similarly, in *Carey v Levy,* 329 Mich 458, 463; 45 NW2d 352 (1951), the Court stated:

"We think the law controlling the instant case is stated quite definitely in *Kirl v Zinner,* 274 Mich 331, wherein the plaintiff disavowed any remembrance of having consummated the settlement and release. We quote:

" 'A compromise and release is not to be confused with the law of contract, in which equivalents are exchanged, for the very essence of a release is to avoid litigation, even at the expense of a strict right. * * *

" 'It is a general and salutary rule that one repudiating or seeking to avoid a compromise settlement or release, and thereby revert to the original right of action, must place the other party *in statu quo,* otherwise the very fact of payment, in consideration of the compromise of release, will likely operate as a confession of liability.'

"Our research has brought attention to several decisions of courts in other jurisdictions which are in full accord with our holding in *Kirl v Zinner, supra,* and in accord with the decision of the trial judge in the instant case."

In the instant case, there has been no showing that plaintiffs tendered back the amount paid in benefits. However, there is no indication that the

release was signed in consideration for receiving such benefits or that the benefits were received because plaintiffs signed the release. Without the presentation of additional evidence, this Court does not believe that the fact that plaintiffs might not have tendered back the benefits would alone serve to justify the trial court's order of accelerated judgment. Nevertheless, because we hold the release in question to be unambiguous, these issues need not be resolved

Affirmed. Costs to defendants.