**FINKLER, Appellant,**

v.

**TOLEDO SKI CLUB, Appellee.**

[Cite as: *Finkler v. Toledo Ski Club* (1989), 63 Ohio App.3d 11.]

Court of Appeals of Ohio,
Lucas County.

No. L–88–308.

Decided May 19, 1989.

*William Maloney,* for appellant.

*Marc J. Meister,* for appellee.

*Per Curiam.*

This case is before the court on appeal from the September 9, 1988 judgment of the Lucas County Court of Common Pleas.

The general facts in this case are uncontroverted. On July 12, 1986, Donald R. Cook drowned during a canoeing trip in Michigan sponsored by appellee, the Toledo Ski Club, a Michigan non-profit corporation. The decedent became a member of the Toledo Ski Club upon his initial application received in September 1984. At issue was whether, at the time of the accident, the decedent was a current member since his renewal application had not been received by appellee, although the uncontroverted affidavit of the past president of the Toledo Ski Club indicates that the decedent was a current dues-paying member. This issue is critical because the back of the initial application for membership, as well as the renewal application for the year prior to the accident, contained a provision absolving appellee from liability for death of a member during a club activity.

Appellant, Denise E. Finkler, instituted this action asserting that appellee was negligent regarding its protection of the decedent and failure to warn the decedent of the danger, and breached its warranties and representations of safety. In addition, appellant alleged that she was entitled to damages under Ohio's wrongful death statute. Appellee moved for summary judgment asserting that Michigan law controlled, and that, under Michigan law, the express assumption of the risk under the circumstances of this case is effective to limit liability. The trial court agreed with appellee and dismissed appellant's case. Appellant has sought an appeal to this court asserting three assignments of error:

"1. The Lower Court erred in holding that the exculpatory language in Appellee's form is valid and enforceable.

"2. The Lower Court erred in interpreting the exculpatory language in Appellee's form as continuing in effect after expiration of the time period covered by the form.

"3. The Lower Court erred in holding that the decedent had, as a matter of law, assumed the risk of his own injury and death."

Since appellant has not assigned as error the finding of the trial court that Michigan law controls, we have not addressed that issue and proceed to review the court's decision in light of Michigan law.

In her first assignment of error, appellant argues that the contractual provision which would eliminate appellee's liability in this case should be declared void and unenforceable because it is too broad, covering more than mere negligence, and unconscionable since it permits appellee to avoid all liability. Furthermore, appellant argues that a valid contract was not formed because there was no meeting of the minds.

A party may contract to limit his liability for his own acts of negligence. *Tope v. Waterford Hills Road Racing Corp.* (1978), 81 Mich.App. 591, 596–600, 265 N.W.2d 761, 764–765; *Klann v. Hess Cartage Co.* (1973), 50 Mich.App. 703, 705–709, 214 N.W.2d 63, 65–66; and Restatement of the Law 2d, Contracts (1979) 65, Section 195. Exceptions have been made to this general rule for specific circumstances where public policy mandates that the tortfeasor retain liability for the harm caused. Public policy is defined as that which is "naturally and inherently just and right." *Tope v. Waterford Hills Road Racing Corp., supra,* 81 Mich.App. at 596, 265 N.W.2d at 763–764. Therefore, if the tortfeasor's conduct is so shocking to the average person's conception of justice, such act must be held to be contrary to public policy even though such policy has never been reduced to a constitutional provision, statute, etc. *Id.* Examples of such violations of public policy in assumption-of-the-risk cases include situations where: gross negligence is involved, the indemnity clause would induce the tortious act, the risk of harm is more than an undesirable possibility, common carriers or public servants are involved, the tortfeasor has superior bargaining power and a significant portion of the general public is affected, intentional acts of misconduct are involved, or protected classes are involved. *Id.; Klann v. Hess Cartage Co., supra;* and Restatement of the Law 2d, Contracts, *supra.* An overly broad indemnity clause is enforceable only to the extent it does not violate public policy. *Klann v. Hess Cartage Co., supra,* 50 Mich.App. at 707–709, 214 N.W.2d at 66.

In order to protect public interests, such indemnity provisions are to be strictly construed against the drafter. *Kircos v. Goodyear Tire & Rubber Co.* (1981), 108 Mich.App. 781, 787–89, 311 N.W.2d 139, 142. Furthermore, the indemnification language must be clear and unequivocal. *Id.* at 785–787, 311 N.W.2d at 141. The contract must also be freely and knowingly entered into. 15 Williston, Law of Contracts 3d (1972) 141, Section 1750. However, the mere failure to read the contract will not relieve a party from enforcement of its provisions. *DeValerio v. Vic Tanny Internatl.* (1984), 140 Mich.App. 176, 179–181, 363 N.W.2d 447, 449.

In the case *sub judice*, the indemnity provision appeared on the reverse side of a nine- by four-inch card which contains general personal statistical questions. Immediately above the signature line is a paragraph set off by the word "NOTICE" which states that membership is conditioned upon the applicant agreeing not to hold the Toledo Ski Club, its officers and agents, liable for "any theft, loss of property, any accident, injury or death of or to members, their children or guests attending Club activities whether arising as a result of negligence or otherwise."

First, even though the above-mentioned clause attempts to exempt appellee from liability for all misconduct, it cannot be enforced to this extent under Michigan law. However, this case involves only negligence and not gross negligence or intentional tortious acts. Thus, in this regard, this case is similar to the *Klann* case and the indemnity clause is effective to bar a claim based on negligence.

Second, we find that a valid contract existed by means of the initial application for membership and the renewal application. The language used is clear and unequivocal. Furthermore, the clause is not inconspicuously buried within the body of a long contract. It is the major "legal" clause on the form and is clearly delineated as a clause that should be read. There is no evidence to suggest that the decedent did not freely and knowingly sign the application form. Indeed, the obvious inference to be made is that the decedent desired to participate in the events sponsored by appellee and agreed to do so on appellee's terms.

Therefore, we hold that a valid and enforceable indemnity contract was entered into by the parties which would absolve appellee from liability under the facts of this case. Appellant's first assignment of error is, therefore, found not well taken.

The next issue to be considered is whether this contract had expired at the time of the injury, which is the basis of appellant's second assignment of error.

Appellant argues that we should strictly construe the contract language to limit it to the express time frame agreed upon. In this case, the membership year is defined as June 1 through May 31 on the initial application and on the renewal application. Initially, the decedent executed a membership application form containing the indemnity clause. A renewal application was received June 21, 1985 and contained the same indemnity provision. The renewal form for the membership year of June 1, 1986 to May 31, 1987, was never received by appellee. However, Robert Frey, president of the club for the 1986–1987 year, attested that the decedent was a dues-paying resident member of the club prior to his death despite the fact that he did not submit a renewal application. There was no contradictory evidence submitted by appellant that the decedent was not a current dues-paying member. Frey also attested that a grace period of four-to-five months was generally granted for return of renewal applications before membership was revoked. In this case, the decedent's death occurred approximately one and one-half months after the beginning of the 1986–1987 membership year, which is well within the grace period allowed. Therefore, we find that the payment of dues for the 1986–1987 membership year was sufficient to renew the decedent's membership and the signing of a renewal application was a mere formality.

Wherefore, we find appellant's second assignment of error not well taken.

Finally, appellant contends that the trial court improperly held that appellee had proven that the decedent had expressly assumed the risk of his injury.

The doctrine of assumption of the risk has been abandoned in Michigan except in cases involving employer/employee relationships and cases involving express contractual assumption of the risk. *Felgner v. Anderson* (1965), 375 Mich. 23, 54–56, 133 N.W.2d 136, 153. This latter type of assumption of the risk is actually an agreement that one party does not owe a duty of ordinary care to the other party. Thus, such an agreement will completely bar the injured party's negligence claim. *Kreski v. Modern Wholesale Elec. Supply Co.* (1987), 429 Mich. 347, 415 N.W.2d 178. Having already found that the indemnity clause in this case is effective to limit appellee's liability, we find appellant's third assignment of error not well taken.

Having found no error in the trial court's judgment, the judgment is affirmed. Appellant is hereby ordered to pay the costs of this appeal pursuant to App.R. 24.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER and ABOOD, JJ., concur.